AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

JAMIE-LYNN SIGLER and ABRAXAS J. DiSCALA,

**SUMMONS IN A CIVIL CASE**

V.

WEST 23rd STREET LLC, DANIEL SCHLESINGER, and SAMMY COHEN

CASE NUMBER:

06 CV 0551

JUDGE CASEY

TO: (Name and address of defendant)

West 23rd Street LLC, Daniel Schlesinger and Sammy Cohen
530 Seventh Avenue, Room 208
New York, New York 10018

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

MEISTER SEELIG & FEIN LLP
2 Grand Central Towers
140 East 45th Street - 19th Floor
New York, New York 10017

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

JAN 2 4 2006

J. MICHAEL McMAHON

CLERK                                                    DATE

_Marcos Quintero_

(BY) DEPUTY CLERK

AO 440  (Rev. 10/93)  Summons In a Civil Action -SDNY  WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served: _____
_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐  Returned unexecuted: _____
_____
_____
_____

☐  Other *(specify):* _____
_____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
　　　　　　　　　　Date　　　　　　　　　　　　　　　　　　　　　　Signature of Server

　　　　　　　　　　　　　　　　　　　　　　　　　　　 _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　 Address of Server

(1)     As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JAMIE-LYNN SIGLER and ABRAXAS J. DiSCALA,

          Plaintiff,

    -against-

WEST 23rd STREET LLC, DANIEL SCHLESINGER,
and SAMMY COHEN,

          Defendant.
-------------------------------------------------------------X

JUDGE CASEY

06 CV 0551

__ CV _____

**COMPLAINT AND JURY
DEMAND**

RECEIVED
JAN 2 4 2006
U.S.D.C. S.D. N.Y.
CASHIERS.

    Plaintiffs, Jamie-Lynn Sigler ("Jamie") and Abraxas J. DiScala ("A.J."), by their

attorneys, Meister Seelig & Fein LLP, as and for their Complaint against West 23rd Street, LLC

("West 23"), Daniel Schlesinger ("Danny"), and Sammy Cohen ("Sammy") allege as follows:

### Nature of the Action

    1.  This is an action for false endorsement under the Lanham Act, 15 U.S.C. § et seq. and

an infringement of Jamie's and A.J's rights to privacy under Sections 50 and 51 of the New York

Civil Rights Law (New York's right of privacy statutes) all arising out of the defendants

knowing unauthorized and wrongful use of Jamie's and A.J.'s names, images and likeness (the

"Images") both in and to promote the sale of the defendants' clothing line known as IMI.

Alternatively, Jamie and A.J. seek damages for the defendants' anticipatory repudiation of the

agreement that provided for the amount of compensation to be paid to Jamie and A.J. by the

defendants for the use of their Image (the "Model Release"), which was drafted and agreed to by

the defendants, but never signed.

    2.  Jamie is an actress, model and a professional spokesperson. She currently portrays

Meadow Soprano on the popular HBO series, "The Sopranos." A.J. is also a model and

professional spokesperson. The defendants are in the apparel business and sell a clothing line,

known as IMI. Defendants Danny and Sammy are principals of defendant West 23. Last year, the defendants contacted Jamie and A.J and offered to compensate them to appear in a photo shoot for purposes of endorsing their new clothing line. Subject to entering into a written release, Jamie and A.J. agreed to allow this use of their Images.

3.  At the request of the defendants, Jamie and A.J. appeared at a photo shoot on May 31, 2005 (the "Photo Shoot"). At the time of the Photo Shoot, Jamie and A.J. and the defendants were still negotiating the terms of the Model Release, the agreement pursuant to which the defendants would obtain the right from Jamie and A.J. to use the results of the Photo Shoot in connection with advertising the defendants' clothing line. Jamie and A.J. agreed to appear for the Photo Shoot on the express written condition that none of the photographs taken would be used by the defendants, in any manner whatsoever, until such time as the terms of the Model Release were agreed to and signed. Jamie's and A.J.'s attorney, Mitchell Schuster, sent an email to the defendants' attorney on the date of the Photo Shoot confirming this understanding between the parties.

4.  Neither the Model Release, nor any other agreement, was ever signed by Jamie and/or A.J. authorizing the defendants to use the Images, yet the defendants have published photographs of Jamie and A.J. and used the Images with the intent to profit from their use.

### Parties, Jurisdiction and Venue

5.  Plaintiff, Jamie is a natural person residing in the State of New York.

6.  Plaintiff, A.J. is a natural person residing in the State of New York.

7.  Defendant, West 23, is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business at 530 Seventh Avenue, Room 208, New York, New York 10018.

8.  Defendant, Danny, is a natural person with a principal place of business at 530 Seventh Avenue, Room 208, New York, New York 10018.

9.  Defendant, Sammy, is a natural person with a principal place of business at 530 Seventh Avenue, Room 208, New York, New York 10018

10. This Court has federal question and diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over plaintiffs' claims under New York law pursuant to 28 U.S.C. §1367.

11. Venue is proper in this court pursuant to 28 U.S.C. §1391(b).

## The Facts

12. Plaintiff, Jamie, is a professional, actress, model and spokesperson.  Plaintiff, A.J., is a professional model and spokesperson. Because of their careers in acting, modeling and appearing as spokespersons, Jamie and A.J. have sought to control the use of their Images so that they may (1) control the message as to what particular products they wish to endorse and (2) obtain the best opportunities in a highly competitive environment.  Jamie and A.J. spend a considerable amount of time, money and effort in developing their public personas so that they can obtain the best professional opportunities associated with the use of their Images.

13. Last year, Jamie and A.J. began negotiations of a "Model Release" with the defendants to appear as models in photographs for a clothing line the defendants were selling known as IMI.

14. On May 31, 2005, and in anticipation of the conclusion of the negotiations of the Model Release and its execution, Jamie and A.J. appeared at the Photo Shoot where photographs of them were taken for use in connection with advertising the defendants' IMI clothing line. Jamie's and A.J.'s appearance at this Photo Shoot was expressly conditioned on the defendants' express agreement that the Images could not and would not be used in any medium whatsoever,

3

until such time as Jamie and A.J. signed a formal agreement. (A copy of the email from Jamie's and A.J.'s attorney to the defendants' attorney setting forth this condition is attached as Exhibit A.)

15. During the Photo Shoot, A.J.'s Rolex Daytona Paul Newman model watch (the "Watch") disappeared.

16. After the Photo Shoot Jamie and A.J. and the defendants, through their respective counsel, continued to negotiate the terms of the Model Release.

17. On or about July 18, 2005 and after several rounds of negotiations, Jamie's and A.J.'s counsel sent a revised draft of the Model Release to counsel for the defendants. (A copy of this draft of the Model Release is attached as Exhibit B.)

18. Later, on July 18, 2005, Danny, delivered a check for $75,000.00 payable to AJLSD Inc., which is an entity that Jamie and A.J. had previously designated as the payee of the consideration that was to become due upon the execution of the Model Release.

19. Following the issuance of the check, Danny sent A.J. an email confirming that the defendants had agreed to the terms of the draft of the Model Release stating that the deal was "done." Upon receipt of the email, A.J. caused the $75,000.00 to be deposited into an account of AJLSD, Inc. (A copy of this check and the deposit slip is attached as Exhibit C, and a copy of Danny's email, which was actually received by A.J. on July 20, 2005, even though it was obviously incorrectly dated as September 26, 2007, is attached as Exhibit D.)

20. Shortly after July 18, 2005, Danny informed A.J. that Sammy no longer agreed to the terms as set forth in the Model Release which had previously been agreed to and the defendants thereby repudiated the agreement.

21. Despite the fact that neither Jamie nor A.J. ever provided the defendants with written consent to use the Images, Jamie's and A.J.'s Images appeared in advertisements for the

defendants IMI clothing line in the September 2005 issue of *SLAM*, the August 2005 issue of *Kicks*, *a SLAM presents magazine,* the September 2005 issue of *Cargo* and the August/September 2005 issue of *Complex* magazines. Each of these magazines is available for purchase in New York and copies of the Images that appeared in these magazines are attached as Exhibit E.

22. The defendants were aware that they could not use the Images or violate Jamie's or A.J.'s rights of privacy in connection with the IMI clothing line without first obtaining a written release.

23. However, even though the defendants knew that they needed a written release to use the Images, and even though they never obtained such a release from either Jamie or A.J., the defendants willfully used the Images, thereby infringing on Jamie's and A.J.'s rights of privacy in the advertisements of the IMI clothing line.

24. In addition to wrongfully using the Images in the advertisements of their clothing line, the defendants are also deliberately and knowingly infringing on Jamie's and A.J.'s rights of privacy in connection with the marketing and advertising of the IMI clothing line.

25. The defendants have and at all relevant times hereto have had, actual and constructive knowledge of the rights of Jamie and A.J. but have proceeded in deliberate and flagrant disregard of same.

26. The defendants' unauthorized and wrongful use of the Images in the advertisement of the IMI clothing line is likely to cause confusion among purchasers of the defendants' clothing.

27. The defendants have been transacting, and continue to transact, business in interstate commerce and have been infringing and continue to infringe on Jamie's and A.J.'s rights of privacy. The defendants have derived substantial revenues from the sale and proposed sale of their clothing line.

28. The aforesaid acts of the defendants have been committed willfully and with full knowledge of the rights of Jamie and A.J. with the intention of: (i) misleading the public; (ii) wrongfully misappropriating and trading upon the nationally recognized value of the goodwill and reputation of Jamie and A.J.; and (iii) improperly benefiting from and depriving Jamie and A.J. of the benefits arising from Jamie's and A.J.'s reputation and goodwill, all of which derive from Jamie's and A.J.'s careful cultivation of the value associated with their Images.

29. Moreover, through the investment of substantial money, time and energy in advertising, publicizing and promoting their Images, Jamie and A.J. have developed and now possess an extremely valuable right of privacy in Images.

30. The defendants' identification of Jamie and A.J. in association with the promotion, advertising and sale of the IMI clothing line constitutes a willful infringement of Jamie's and A.J.'s rights of privacy.

**First Claim for Relief –False Endorsement Under Section 43(a) of the Lanham Act**

31. Jamie and A.J. repeat and reallege paragraphs 1 through 30 as if fully set forth herein.

32. Defendants use of Jamie's and A.J.'s Image in advertisements for the defendants' clothing line constitutes a false endorsement and false designation of origin under Section 43(a) of the Lanham Act.

33. By reason of the foregoing, Jamie and A.J. are entitled to injunctive and monetary relief against the defendants, destruction of the infringing Images, treble damages, costs and attorneys fees pursuant to 15 U.S.C. § 1125(a).

**Second Claim for Relief– New York Civil Rights Law §§ 50 and 51**

34. Jamie and A.J. repeat and reallege paragraphs 1 through 33 as if fully set forth herein.

35. West 23 has used Jamie's and A.J.'s Images for advertising purposes or purposes of trade without Jamie's and A.J.'s prior written consent.

36. West 23's use of Jamie's and A.J.'s Images violates New York Civil Rights Law § 50.

37. As a direct and proximate result Jamie and A.J. have suffered damage from the unauthorized use of their Image and are entitled to the remedies for this conduct provided by New York Civil Rights Law § 51.

### Third Claim for Relief – Breach of Contract

38. Jamie and A.J. repeat and reallege paragraphs 1 through 37 as if fully set forth herein.

39. Jamie and A.J. have fully performed their obligations under the July 18, 2005 draft of the Model Release.

40. The defendants have breached the agreement reflected in the July 18, 2005 draft of the Model Release by repudiating it.

41. By reason of the foregoing, A.J. and Jamie have suffered damages in an amount to be determined at trial.

### Fourth Claim for Relief – Negligence with respect to the Watch

42. Jamie and A.J. repeat and reallege paragraphs 1 through 41 as if fully set forth herein.

43. Defendants had a duty at common law to safeguard Jamie's and A.J.'s property during the Photo Shoot.

44. Defendants did not exercise reasonable cause in the exercise of their common law duty to safeguard Jamie's and A.J.'s property during the Photo Shoot.

45. As a direct and proximate result of defendants' failure to exercise reasonable care in the safeguarding of Jamie's and A.J.'s personal property during the Photo Shoot, the Watch disappeared.

46. By reason of the foregoing A.J. has suffered damages in an amount to be determined at trial.

## Prayer for Relief

WHEREFORE Plaintiffs demand judgment, on all causes of action:

A. permanently enjoining and restraining defendants and any of their affiliates and licensees from any further use of Jamie's and A.J.'s Image for any commercial purposes whatsoever, including, but not limited to advertising, promotion or exploiting Jamie's and A.J.'s Images in any other way;

B. finding that defendants have willfully infringed on Jamie's and A.J.'s Image in violation of Section 43(a) of the Lanham Act and preliminarily and permanently enjoining Defendants from continuing such infringement;

C. finding that defendants have willfully violated Jamie's and A.J.'s New York right to privacy pursuant to N.Y. Civil Rights Law §§ 50 and 51 and permanently enjoining Defendants from continuing such infringement;

D. awarding compensatory damages, punitive and exemplary damages in an amount to be proven at trial;

E. ordering destruction of all of the Images, including, but not limited to, any still pictures, photographs, chromes, negative, illustrations, portraits, digital photographs and/or other visual materials and images of Jamie and/or A.J. in their possession, custody and control of defendants;

F. ordering defendants to pay the costs and disbursements of this action, including attorneys' fees as provided by federal and New York State statutes; and

G.  awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims and issues alleged herein.

Dated:        New York, New York
              January 23, 2006

MEISTER SEELIG & FEIN LLP

By:_____
          Mitchell Schuster (MS 6653)
          Howard S. Koh (HK 4730)
          2 Grand Central Tower
          140 East 45th Street, 19th Floor
          New York, New York 10017
          (212) 655-3500

          *Attorneys for Plaintiffs*

# **EXHIBIT A**

## Sharda Rooplal

**From:** Mitch Schuster
**Sent:** Tuesday, May 31, 2005 8:38 AM
**To:** 'rrosenberg@brownraysman.com'
**Subject:** Model Release

Dear Robin:

Please allow this to confirm our conversation this morning wherein it was agreed by and between West 23rd Street, LLC and Jamie-Lynn DiScala and Abraxas J. DiScala (collectively, the "DiScala's") that West 23rd Street, LLC  or any of its affiliates, subsidiaries, successors, assignees, agents and licensees (collectively "IMI") shall not use any of the photography of the DiScala's, including, without limitation, any still pictures, photographs, chromes, negatives, illustrations, portraits, digital photographs and/or other visual materials and images of any kind until such time as a formal agreement is entered into and executed by the parties.

Please call me at your earliest convenience to finalize the formal agreement.

Mitchell Schuster
Meister Seelig & Fein LLP
2 Grand Central Tower
140 East 45th Street, 19th Floor
New York, NY 10017
(212) 655-3549 (direct)
(646) 539-3649 (fax)

NOTICE: Unless specifically set forth herein, the transmission of this communication is not intended to be a legally binding electronic signature, and no offer, commitment or assent on behalf of the sender or its client is expressed or implied by the sending of this facsimile, or any attachments hereto.  The material submitted herewith contains, and is intended to be a confidential transmission of information or documents from MEISTER SEELIG & FEIN LLP which is legally privileged. The materials or information enclosed are intended only for the use of the individual or entity named in this transmission sheet. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action in reliance on the contents of this transmission is strictly prohibited. If you have received this telecopy transmission in error, please notify us by telephone immediately, so that we can arrange for the return of the original documents to us at our cost.

# **EXHIBIT B**

# *IMI*

## MODEL RELEASE
Authorization to Reproduce Photograph and Likeness
Worldwide Media, Advertising & Promotional Viewing

Name:  Jamie-Lynn DiScala and Abraxas J. DiScala

Address_____

Phone Number_____

Social Security Number:·  ·

Jamie-Lynn DiScala: _____

Abraxas J. DiScala: _____

Effective Date: May 31, 2005

A.      In consideration of the opportunity afforded each of the undersigned to participate in the West 23rd Street, LLC production of the "IMI Collection 2005 Photo Shoot" on May 31, 2005 (the "Production") and for One Hundred Twenty-five Thousand and 00/100 ($125,000.00) Dollars in hand paid and other good and valuable consideration, the sufficiency of which is hereby expressly acknowledged, the undersigned, Jamie-Lynn DiScala and Abraxas J. DiScala (hereinafter, "we" or the "DiScalas"), jointly and severally, hereby expressly and irrevocably consent and grant to West 23rd Street, LLC and to each of their affiliates, subsidiaries, successors, assignees, agents, and licensees (hereinafter collectively referred as "IMI"), solely in connection with IMI's business in the apparel industry and subject to the restrictions contained herein, a fully paid up and royalty free license to, together with the irrevocable right to, throughout the universe and solely during the Term (i) create, use, copy, reproduce, display, exhibit, project, publish, copyright, distribute and otherwise exploit as IMI may desire, any and all types of photography resulting from the Production, including, without limitation, all still pictures, photographs, chromes, negatives, illustrations, portraits, digital photographs and/or other visual materials and images of any kind or nature created, produced and/or reproduced by or from any and all devices designed to reproduce, project, illustrate, transmit and/or display any or all of the same, whether now or hereafter known or discovered, which IMI or its agents may make of either or both of us and (ii) use, copy, reproduce, display, exhibit, project, publish, copyright, distribute and otherwise exploit as IMI may desire one or both of our names, signatures, biographies and other personal identification (collectively, "Personal Identification") solely in connection with any of the rights granted above, (collectively, the 'Works") including, without limitation, the unfettered right to use our image, silhouette, physical likeness and other reproductions of either or both of us, and any Personal Identification of one or both of us, on or in connection with the exhibition, advertising and all other exploitation of the Production and Works whether distributed for worldwide advertising purposes, promotional purposes or otherwise, in any and all visual media or other media or form, whether now or hereafter known or discovered,

BRMFS1 587028v6
**INITIALS**_____

including without limitation, any print medium (including without limitation in the following magazines: CARGO, SLAM, XXL, Complex, FHM and Details), internet, posters, point of purchase displays, sniping and any other use of the Production and Works, or segments or derivative works thereof, whether used alone or coupled together with other visual and/or audio/visual works. We expressly agree and understand that any of the Works incorporating our physical likeness and/or portions thereof as embodied in the Production and/or Works, segment(s) or derivative works thereof, all rights therein, the use of the Personal Identification of one or both of us in connection with the foregoing, and all proceeds derived from any or all of the foregoing, shall be throughout the universe, in perpetuity, the sole and absolute property of IMI, and IMI shall have the unlimited right to own and copyright (and during the Term (as defined in Paragraph B below) sell, alter, use, re-use, publish, re-publish, edit, modify, exhibit, and otherwise use and exploit) the Production and Works, and any parts thereof, and any images created or produced during the making thereof, in any manner as IMI desires subject to the restrictions contained herein. During the Term, IMI shall have the unlimited right to edit, modify, and/or delete material from the Production and Works, juxtapose any part of the Production and Works with any other visual and/or audio/visual works, change the sequence of events in the Production and Works, fictionalize events and any other changes in the Production and Works that IMI deems appropriate in its sole and exclusive discretion. During the Term, the Works and any portion(s) thereof, may also be used for exhibition, archival, historical and promotional uses and purposes including, without limitation, for use at all trade shows, exhibitions, and in all promotional televised, motion picture, video and print magazines and media. We acknowledge that neither IMI nor any other person or entity has any obligation to use the Production or the Works, or the Personal Identification of one or both of us in connection therewith, or to exercise any rights granted herein.

B.   Paragraph A above shall be limited as follows: (i) The monetary consideration to be paid in consideration for the grant of licenses and rights set forth in this Agreement shall be paid as follows: (a) $75,000.00 upon signing and delivery of this Agreement to IMI; (b) $50,000.00 on the date of the charity event to be mutually agreed upon by the DiScalas and IMI and (c) an amount equal to five percent (5%) of the Gross Sales of the men's division of West 23rd Street, LLC's operations for the period from July 1, 2005 through December 31, 2005, which amount will be paid on or before March 31, 2006. For purposes of the preceding sentence, "Gross Sales" means all revenues from sales of products of the men's division of West 23rd Street, LLC computed on an accrual basis consistently applied and from whatever source derived but in computing "Gross Sales" there shall be deducted (i) sales and withholding taxes and (ii) any uncollectible accounts or chargebacks, which shall reduce "Gross Sales" for the applicable period. (ii) The Term of the license granted to IMI herein shall be, (a) with respect to the portion of the Works including the image, silhouette and/or physical likeness of Jamie-Lynn DiScala, for a period from the Effective Date of this Agreement through December 31, 2005, and (b) with respect to the portion of the Works which does not include the image, silhouette, physical likeness and other reproductions of Jamie-Lynn DiScala, for a period from the Effective Date of this Agreement through March 31, 2006 (the "Term"). (iii) Provided IMI is not in breach of this Agreement, at IMI's option, with respect to each Term described in subitem (ii) of this sentence, the Term of the license granted to IMI herein may be extended for one (1) additional period of six (6) months from the expiration of the initial Term, the conditions of such extension shall be pursuant to the good faith negotiations of IMI and Jamie-Lynn DiScala and Abraxas J. DiScala (with respect to the Term described in item (ii)(a) of this sentence) and IMI and Abraxas J. DiScala (with respect to the Term described in item (ii)(b) of this sentence), and in each case expressed in a writing signed by all applicable parties hereto. (iv) The term "internet" shall mean any IMI controlled or affiliated internet sites and any of IMI's customers/retailers internet sites all of which such sites shall have as their primary focus the clothing and apparel industry.

(v) We shall each have the sole and exclusive right to approve those portions of the Works incorporating our respective name, image, silhouette, Personal Identification and/or physical likeness prior to publication, as more specifically set forth in Section C below.

C.   Each of us warrant and represent that each of us are at least 18 years of age and individually have the full legal right, authority and power to enter into this Agreement and to grant all of the rights set forth herein, that no consent or authorization from any third party is required in connection herewith, and that use of the Production and/or the Works and/or the grants of license and rights made hereunder will not violate any right of any nature of, or conflict with any contract with or commitment made to, any person, corporation or other entity.  Each of us hereby warrants and represents that he or she has read and fully understands the meaning and effect of all of the terms and provisions of this Agreement and each of us fully intends to be legally bound by the terms hereof.  Each of us hereby releases IMI, its employees, affiliates, subsidiaries, successors, assignees, agents, and licensees from, and agrees not to use or bring any proceeding against any of the foregoing for, any and all claims, causes of action and/or demands, whether known or unknown, arising out of or in connection with any of the uses permitted by the terms hereof, including, without limitation, any and all claims or causes of action for invasion of privacy, infringement of each of our rights of publicity, defamation and any other intellectual, personal and/or property rights.  Each of us agrees that he or she will not seek any further or other consideration or compensation from IMI, its affiliates, subsidiaries, successors, assignees, agents, and/or licensees in connection with the rights and privileges granted to IMI herein.  Notwithstanding anything else to the contrary contained herein, we hereby expressly reserve all rights and remedies, both at law and equity, in the event of a breach of this Agreement.  Each of us understands that he and/or she, as applicable, has the sole and exclusive right to approve each separate advertisement or other work that embodies any portion(s) of the Works incorporating our respective name, image, silhouette and/or physical likeness and/or other Personal Identification (each an "IMI Work") prior to the first public use or publication by IMI or its agent, however he or she agrees that any disapproval shall be expressly stated in writing to IMI, within five (5) days of our (or those authorized to act on our behalf such as our manager, agent or attorney) initial receipt of such IMI Work, that such disapproval must be rendered in good faith and shall not be unreasonably withheld or delayed, and that the applicable IMI Work shall be deemed approved if no disapproval is received in writing within the five (5) day period set forth in this sentence.  Except as provided in the immediately preceding sentence, each of us expressly waives all rights of inspection and/or approval of the rough and finished Production and Works, and any IMI Work(s), including without limitation derivative works and segments thereof, and each of us, jointly and severally, releases IMI, its affiliates, subsidiaries, successors, assignees, agents, and licensees from any and all liability for any claims of alteration, optical illusion, distortion, faulty mechanical reproduction and any other claims of a similar or dissimilar nature.  For purposes of clarity, neither IMI not its agents shall be permitted to publish or otherwise publicly use the rough and/or finished Production and Works or any IMI Work without our prior approval as set forth in this paragraph, above; provided, however that once the Production, Work and/or IMI Work has been approved, no further approval will be required for IMI or its agent to publish or otherwise use such Production, Work or IMI Work in accordance with the terms of this Agreement.  Each of us, jointly and severally, expressly agrees to save and hold IMI, its affiliates, subsidiaries, successors, assignees, agents, and licensees harmless from and against any and all third party claims, losses, damages, suits, actions, expenses (including but not limited to attorneys' fees and disbursements) and liabilities arising out of or relating to any breach of any of the statements, representations or warranties made by either or both of us herein.  Each of us understands that IMI is proceeding with the production, publication, distribution and exploitation of the Production

BRMFS1 587028v6
**INITIALS_____**

3

and Works in reliance upon and induced by the rights being granted, and the warranties and representations given, by each of us as contained in this Agreement.

D.   IMI warrants and covenants that it shall use the Works solely for permitted purposes only. IMI agrees to save and hold the DiScalas harmless from and against any and all third party claims, losses, damages, suits, actions, expenses (including but not limited to attorneys' fees and disbursements) and liabilities arising out of or relating to any breach by IMI of any of the statements, representations or warranties made by IMI as contained in this Agreement.  IMI understands that each of us is proceeding with the Production and is granting of licenses and rights granted hereunder in reliance upon and induced by the warranties and representations given by IMI as contained in this Agreement.

E.   This agreement has been entered into in the State of New York and will be governed by those laws of the State of New York which are applicable to contracts entered into and performed entirely within the State of New York without regard to conflict of laws principles. Any disputes which arise under this Agreement, including after termination of this Agreement, will be heard only in the State or Federal courts located in the State of New York, County of New York.  IMI, Jamie-Lynn DiScala and Abraxas J. DiScala expressly agree to submit to the jurisdiction of the foregoing courts in the State of New York, County of New York. IMI, Jamie-Lynn DiScala and Abraxas J. DiScala expressly waive any right to contest the jurisdiction, venue or convenience of any court sitting in the State of New York, County of New York.

F.   This Agreement constitutes the entire agreement between the parties hereto relating to the subject matter hereof and supersedes all previous agreements, promises, representations, understandings, negotiations and other communications, whether written or oral, between the parties with respect to the subject matter hereof.


APPROVED AND ACCEPTED
West 23rd Street, LLC                              Witness:_____


By:_____

Title:_____


_____               Witness:_____
Jamie-Lynn DiScala


_____               Witness:_____
Abraxas J. DiScala


BRMFS1 587028v6
**INITIALS_____**

4

# EXHIBIT C



01/21/2005 14:27 FAX   2127880920

# **EXHIBIT D**

**Mitch Schuster**

| | |
|---|---|
| **From:** | dannys [dannys@tmo.blackberry.net] |
| **Sent:** | Wednesday, September 26, 2007 5:46 PM |
| **To:** | ajdiscala@aol.com |
| **Subject:** | Re: |

We have agreed to all I just didn't know about Atlantis its not the money But its done -----Original Message-----

| | |
|---|---|
| **From:** | **"Aj Discala" <aj@calicocap.com>** |
| Date: | Sat, 25 Jun 2005 19:39:06 |
| To:"dannys" <dannys@tmo.blackberry.net> | |
| Subject: | Re: |

I m done negotiating its to much work
-----Original Message-----

| | |
|---|---|
| **From:** | **"dannys" <dannys@tmo.blackberry.net>** |
| Date: | Wed, 26 Sep 2007 20:23:12 |
| To:"AJ Discala" <aj@calicocap.com> | |

In middle of meeting In the agreement u want us to pay for flight to Vegas or Atlantis I don't understand Also can we please have that we ship atleat 2.5 miklion before minimum kicks in otherwise we can't do it. I have no problems with both flights I just don't know what u want

Sent wirelessly via BlackBerry from T-Mobile.

Sent wirelessly via BlackBerry from T-Mobile.

**EXHIBIT E**

